**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronald DRISCOLL, Defendant–Appellant.**

**No. 91–1583.**

United States Court of Appeals, Sixth Circuit.

Argued March 17, 1992.

Decided July 16, 1992.

Rehearing and Rehearing En Banc Denied Sept. 2, 1992.

**1474**

Jennifer Mulhern Granholm, Christopher P. Yates (argued & briefed), Office of the U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Paul Borman (argued), Sanford Plotkin, Federal Public Defender, Federal Public Defenders Office, Andrew Patton (briefed), Detroit, Mich., for defendant-appellant.

Before: JONES, BOGGS, and NORRIS, Circuit Judges.

BOGGS, Circuit Judge.

Ronald Driscoll challenges his convictions for being a felon in possession of a firearm and for possessing an unregistered weapon. He raises several issues, the most serious of which involves the question of whether Michigan law fully restores a felon's civil rights upon his release from prison. We determine that Mr. Driscoll's rights were not fully restored. We thus register our disagreement with *United States v. Dahms*, 938 F.2d 131 (9th Cir. 1991) and *United States v. Gilliam*, 778 F.Supp. 935 (E.D.Mich.1991), *appeal argued*, Mar. 23, 1992 (No. 91–2417), and rule in accord with *United States v. Butler*, 788 F.Supp. 944 (E.D.Mich.1991). We also reject Mr. Driscoll's other contentions of error, and affirm his conviction.

**I**

On December 7, 1989, two Detroit police officers were on routine patrol in a marked scout car. As they approached an alley at Longview and Gunston, one of them saw Ronald Driscoll standing on the south side of the alley, holding a shotgun in his left hand. The policemen also saw Mr. Driscoll's cousin, Terry Driscoll, standing on the alley's north side. The officers later stated that as the scout car approached the Driscolls, Ronald Driscoll started running and threw the shotgun to the ground. They also saw Terry Driscoll flee the alley, and said that he took a .32–caliber blue steel revolver from his waistband and tossed it away. The officers chased the Driscolls into an apartment building next to the alley and arrested them. When the shotgun was ultimately introduced into evidence, it was identified as a Stevens shotgun model 770, and was loaded with one 16–gauge shotgun shell. The shotgun's stock was broken and it had no visible serial number. Its barrel was 15.25 inches long, making it a sawed-off shotgun under the definition in 26 U.S.C. § 5845(a)(1). According to 26 U.S.C. § 5841, such guns must be registered.

On June 4, 1990, a federal grand jury indicted Ronald Driscoll on two counts. The indictment charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and with possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). Ronald Driscoll was tried with Terry Driscoll, who was indicted on similar charges. At trial, Ronald Driscoll moved for disclosure and inspection of the police officers' personnel files, arguing that he needed this information to attack their credibility; the district court denied this motion. The parties stipulated that Ronald Driscoll had previously been convicted of a felony, that the shotgun had been shipped or transported in interstate commerce, and that the National Firearms Registration and Transfer Record gave no indication that the shotgun was registered to Mr. Driscoll.

Mr. Driscoll testified that on the night he was arrested, he left work and decided to visit a female cousin on the east side of Detroit. While at her apartment, he heard a loud banging on the back door. He became scared and left, but eight to ten police officers ordered him to freeze and took him back into the apartment. They searched the apartment, and told him to keep his head down. Mr. Driscoll further testified that he had never seen the shotgun until the police questioned him about it at the apartment.

At the end of all testimony, Mr. Driscoll moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29; the court denied this motion. He also requested a judgment in his favor on the grounds that the shotgun could not be readily restored to shoot and thus did not fall within the definition of a firearm given in 26 U.S.C. § 5845. The court rejected this argument, emphasizing that the gun's current state did not mean that it was inoperable before Mr. Driscoll threw it away. The court also refused to instruct the jury "that a gun must be serviceable, or readily made serviceable, or operable in order to be a firearm under the statute."

During closing argument, the prosecuting attorney emphasized that the police officers had to prepare reports on the crime soon after it occurred. On the other hand, he noted, "Terry Driscoll had all this time up until now to come up with this story. He—he didn't have to make a statement; he didn't have to write anything down at that time. He's had all this time to come up with this story." The prosecutor then asked "why would [the officers] risk a 19–year career with the Police Department, and a 5–year career with the Police Department, by coming in and telling you a bald-faced lie ...?" The prosecutor argued that the defendants had an obvious motive to lie: "They're both convicted felons, they don't want to be convicted again; that's what their motivation is.... [T]heir last, best hope in order to avoid a conviction is to—is for you to believe their story; that's their last, best hope." On January 24, 1991, the jury convicted Ronald Driscoll on both counts. On May 7, 1991, the district court sentenced Mr. Driscoll to two concurrent 21–month prison terms and imposed a $3,000 fine. This timely appeal followed.

## II

Mr. Driscoll was convicted for violating 18 U.S.C. § 922(g)(1), which forbids "any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from possessing "any firearm or ammunition." Mr. Driscoll admits that he was convicted of larceny in Michigan in 1987. However, he contends that because his sentence had ended prior to his arrest, he no longer fell within the prohibition of § 922(g)(1). He cites 18 U.S.C. § 921(a)(20), which states that

What constitutes a conviction ... shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Thus, Mr. Driscoll cannot be convicted under § 922(g)(1) if his civil rights had been restored at the time of his alleged crime, and no legal restrictions had been placed on his ability to possess firearms. In order to determine whether Mr. Driscoll's rights were restored upon the completion of his sentence, we must turn to Michigan law.

## A

Several courts have addressed the issue of whether Michigan felons have their civil rights restored upon the completion of their sentence. However, these cases provide only limited guidance, as they are inconsistent both in their reasoning and their results. Mr. Driscoll relies primarily upon *United States v. Dahms*, 938 F.2d 131 (9th Cir.1991), which involved a defendant who was convicted of a felony in Michigan state court. Six years after being released from parole, he committed a crime in Montana while carrying two shotguns, and was convicted of violating 18 U.S.C. § 922(g)(1). Like Mr. Driscoll, the defendant argued that he could not be convicted because Michigan had restored his civil rights. The Ninth Circuit agreed and reversed his conviction.

The *Dahms* court ruled that "[w]e must look to the whole of state law to determine whether his civil rights were restored," 938

F.2d at 133, *see United States v. Gomez,* 911 F.2d 219, 220 (9th Cir.1990), and that "[t]he restoration must be more than de minimis." 938 F.2d at 133. Furthermore, the restoration "must be substantial, but need not be complete." *Ibid.* In reaching these conclusions, the *Dahms* court relied heavily upon this court's decision in *United States v. Cassidy,* 899 F.2d 543 (6th Cir. 1990). The court also quoted the following passage from *Cassidy* to determine what civil rights were to be restored: "Congress intended to encompass those rights accorded to an individual by virtue of his citizenship in a particular state. These rights include the right to vote, the right to seek and hold public office and the right to serve on a jury." 899 F.2d at 549 (footnote omitted).

The *Dahms* court next found that Michigan had restored each of these rights to the defendant. For the right to vote, it cited Mich.Comp.Laws Ann. § 168.758b:

> A person who, in a court of this or another state or in a federal court, has been legally convicted and sentenced for a crime for which the penalty imposed is confinement in jail or prison shall not vote, offer to vote, attempt to vote, or be permitted to vote at an election *while confined.*

(emphasis added). Next, the *Dahms* court referred to the following passage concerning the right to hold office:

> If any candidate for any public office at any election in this state shall be convicted of a felony, as defined in this act, the election of such candidate, if he has been elected, shall be void; and if he shall enter into the office for which he was elected, an information in the nature of a quo warranto to oust him from such office may be filed in the supreme court or the proper circuit court.

Mich.Comp.Laws Ann. § 168.938. *See also Matter of Callanan,* 419 Mich. 376, 355 N.W.2d 69 (1984). Finally, Michigan law provides that "[t]o qualify as a juror a person shall ... [n]ot be under sentence for a felony *at the time of jury selection."* Mich.Comp.Laws Ann. § 600.1307a(1)(e) (emphasis added). The Ninth Circuit held that while these statutes denied certain rights to convicted felons, they automatically restored these rights once they had served their sentences. Thus, the court concluded that the defendant's rights "were substantially restored." *Dahms,* 938 F.2d at 134.

However, the *Dahms* court recognized that even if a felon's rights had been substantially restored, he could still be convicted if this restoration of civil rights expressly prevented him from shipping or possessing firearms. 18 U.S.C. § 921(a)(20). At the time, Michigan law provided that "a person who has been convicted or incarcerated for a felony can not obtain a license to carry a pistol for eight years after release from incarceration." 938 F.2d at 135; *see* Mich.Comp.Laws Ann. § 28.422(1)(c).[1] Thus, the Ninth Circuit concluded that Michigan would not have allowed the defendant to carry a pistol. However, he had not been convicted for possessing a pistol, but for carrying two shotguns. The *Dahms* court considered this difference to be significant, because it also found that "Michigan distinguishes between pistols and shotguns in its licensing and concealment statute", 938 F.2d at 135; *see* Mich. Comp.Laws Ann. § 750.222(a), (d). It concluded, therefore, that Michigan had not intended to restrict a felon's ability to possess *all* types of firearms, and that Michigan would have allowed the defendant to own shotguns. Therefore, it ruled that he could not be convicted for being a felon in possession of a firearm. 938 F.2d at 135.

---

**1.** This rule has since been changed. Mich. Comp.Laws Ann. § 28.422(3)(c) now provides that a license to carry a pistol shall be granted only to persons who have "not been convicted of a crime punishable by imprisonment for more than 1 year." However, "[t]his subdivision does not apply to a conviction that has been expunged or set aside, or for which the person has been pardoned or has had his or her civil rights restored unless the expungement, order, or pardon expressly provides that the person shall not ship, transport, possess, or receive firearms." This change in the law did not take effect until March 28, 1991. This case, therefore, is governed by the same law that was in effect at the time of *Dahms.*

The government argues that *Dahms* should be rejected, and presents an alternative interpretation of Michigan law. It insists that a felon's right to serve on a jury remains limited long after his sentence is finished. To support this argument, it invokes various provisions of the Michigan Court Rules. Under Mich. Const. art. 6, § 5, "[t]he supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts in this state." Under Mich.Ct.R. 2.511(D)(2), all convicted felons may be challenged for cause. The government argues that this constitutes an encumbrance on a felon's ability to serve on a jury, because Mich. Ct.R. 6.412(D)(2) provides that "If, after the examination of the juror, the court finds that a ground for challenging a juror for cause is present, *the court on its own initiative should, or on motion of either party must, excuse the juror from the panel.*" (emphasis added). The government claims that this restriction on Mr. Driscoll's ability to serve on a jury demonstrates that his civil rights have not been substantially restored. This argument was apparently not presented to the *Dahms* court, as the opinion in *Dahms* makes no reference to the Michigan Court Rules.

Several judges in the Eastern District of Michigan have recently ruled on this issue. In *United States v. Butler*, 788 F.Supp. 944 (E.D.Mich.1991), Judge Woods agreed with the government's argument that the Michigan Court Rules allowing felons to be challenged for cause means that such felons have not had their "civil rights restored." On the other hand, in *United States v. Gilliam*, 778 F.Supp. 935, 937 (E.D.Mich.1991), *appeal argued*, Mar. 23, 1992 (No. 91–2417), Judge Gadola reached the opposite conclusion, and ruled that a "challenge for cause presumes that the person has the right to sit on the jury." Judge Gadola also rejected the government's argument that Michigan's restrictions on pistol ownership bring Michigan felons within the exception for felons who "may not ... receive firearms."

[T]he Michigan legislature has seen fit to restrict only the right of a convicted felon to purchase, carry or transport a pistol.... Therefore, under the reasoning of *Dahms*, no felon could be indicted under [18 U.S.C. § 922(g)(1) ] for possessing a rifle, a shotgun, a machine gun, a semi-automatic assault weapon or even a cannon in the state of Michigan. This "glitch in the gun law" has tied this court's hands, and the only remedy appears to lie either in Washington, D.C., or Lansing, Michigan.

778 F.Supp. at 940–41. This interpretation of § 922(g)(1) was further supported by Senator Durenberger in the debate over the statute. He warned that the new law might force "all of the States to review, and possibly revise, their laws governing possession of firearms, especially those State statutes regulating possession of firearms by convicted felons." *Ibid.* (quoting 132 Cong.Rec. S14,974 (daily ed. Oct. 3, 1986) (remarks of Sen. Durenberger)).

Judge Rosen has also recently ruled on this issue. In *United States v. Hammonds*, 786 F.Supp. 650 (E.D.Mich.1992), he stated that

[t]he legislative history discussed in [*United States v. Cassidy*, 899 F.2d 543 (6th Cir.1990) ] clearly reflects that Congress contemplated that the 'restoration of civil rights' exemption of [18 U.S.C.] § 921(a)(20) would only be triggered in those situations in which there had been some showing that the state action restoring "civil rights" was taken after at least some consideration had been given to the individual's fitness to own a firearm.

786 F.Supp. at 660. He concluded that when Congress enacted this provision, it "had in mind the simple example 'where an ex-convict is handed a pardon or expunction order by a state official.' " *Ibid.* (quoting *Cassidy*, 899 F.2d at 548). Thus, Judge Rosen would apply the "restoration of civil rights" exemption of § 921(a)(20) "*only* ... in cases in which some official state *action* granted a convicted felon a specific pardon, expungement or restoration of rights, such as a Restoration of Civil Rights Certificate, as was the case with the defendant in *Cassidy.*" 786 F.Supp. at 662 (emphasis in original).

While we believe this analysis has some merit, it seems to contradict our statement in *Cassidy* that a "narrow interpretation that we look only to the document, if any, evidencing a restoration of rights, would frustrate the intent of Congress that we look to the whole of state law, including state law concerning a convicted felon's firearms privileges." 899 F.2d at 548. *Cassidy* represents the law in this circuit, and cannot be overturned by this panel. "[O]ne panel of this court is bound by the on-point published decision of an earlier panel...." *United States v. Williams*, 949 F.2d 220, 221 (6th Cir.1991), *cert. denied*, ___ U.S. ___, 112 S.Ct. 2308, 119 L.Ed.2d 229 (1992).

Finally, we note the comments of two other judges in the Eastern District of Michigan on this issue. In *United States v. McCarrick*, No. 90-50046 (E.D.Mich. Mar. 9, 1992), Judge Newblatt noted that he agreed with the result reached in *Butler* and *Hammonds*, and was therefore inclined to rule for the government. However, because this court would soon hear oral arguments in this case and in *Gilliam*, he decided to wait until this court had announced a decision on the matter. In *Wolak v. United States*, No. 91-76936 (E.D.Mich. Mar. 17, 1992), a prisoner argued that some of his prior convictions could not be considered for sentencing purposes under the Armed Career Criminal Act (18 U.S.C. § 924(e)) because Michigan law had restored his rights with respect to those convictions. Judge Friedman rejected this claim, because the defendant's right to possess firearms had never been restored under Michigan law. However, the petitioner in *Wolak* was convicted of carrying a revolver, an act clearly forbidden by Michigan's restrictions on carrying pistols. Thus, Judge Friedman distinguished cases such as *Gilliam*, and did not have to decide whether the petitioner's right to possess other types of weapons had been restored. Slip op. at 10–11.

**B**

■ As the above discussion demonstrates, we have been presented with several different lines of reasoning as to whether a felon convicted in Michigan is immune from conviction for violating 18 U.S.C. § 922(g)(1), at least for possession of a weapon other than a pistol. Having analyzed both the relevant precedents and the various statutes involved, we hold that neither Michigan law nor federal law supports Mr. Driscoll's contention that he cannot be prosecuted under § 922(g)(1).

We agree with the government that Michigan does not restore the right of convicted felons to sit on a jury. As noted above, the Michigan Court Rules provide that convicted felons may be challenged for cause during jury selection. Although Mr. Driscoll denies that these rules should be considered as state law, they appear to have the force of law in Michigan. "We do not believe that the Legislature could validly enact a statute in derogation of the Michigan Supreme Court's rule-making power to establish judicial procedure." *People v. Rodgers*, 180 Mich.App. 111, 446 N.W.2d 845, 847 (1989). Thus, the Court Rules constitute part of state law to be studied by this court in determining whether Mr. Driscoll's rights have been restored.

Mr. Driscoll argues that the rules in question do not deprive him of his right to serve on a jury. As noted earlier, a similar position was adopted by Judge Gadola in *United States v. Gilliam*, 778 F.Supp. 935, 937 (E.D.Mich.1991):

> [T]hese restrictions [on a felon's right to serve on a jury] evaporate once the sentence for the conviction has been served.... A challenge for cause presumes that the person has the right to sit on the jury. A challenge as to a person's qualifications to be a juror is not identical to a challenge for cause, the latter often based upon personal reasons. *See, e.g.* Mich.Ct.R. 2.511(D)(3) (challenge for cause based upon bias against a party); Mich.Ct.R. 2.511(D)(9) (challenge for cause based upon a relationship to a party).

We cannot agree with this argument. According to Mich.Ct.R. 2.511(D)(1), a challenge for cause can be made if a person "is not qualified to be a juror." Thus, under

Michigan law, a challenge to a person's qualifications to be a juror can be identical to a challenge for cause.

We also note that the Michigan Court Rules require "a court to excuse a juror whenever a challenge for cause clearly falls within one of the enumerated grounds." *People v. Lamar,* 153 Mich. App. 127, 134–35, 395 N.W.2d 262, 265 (1986); *see also McNabb v. Green Real Estate Co.,* 62 Mich.App. 500, 233 N.W.2d 811 (1975). Thus, a felon may not sit on a jury if his status is challenged. "The dismissal of prospective jurors is governed by [Mich.Ct.R.] 2.511(D). If a party shows that a prospective juror comes within one of this court rule's enumerated categories, the trial court is *without discretion to retain the juror, who must be excused for cause." People v. Badour,* 167 Mich.App. 186, 421 N.W.2d 624, 626 (1988), *rev'd on other grounds,* 434 Mich. 691, 456 N.W.2d 391 (1990) (emphasis added); *see also Poet v. Traverse City Osteopathic Hosp.,* 433 Mich. 228, 236, 445 N.W.2d 115, 119 (1989) ("upon a demonstration ... that a prospective juror fits one of the categories enumerated in [Mich.Ct.R.] 2.511(D)(4)–(13), a trial court is required to excuse such juror for cause").

Thus, we cannot conclude that Michigan has restored Mr. Driscoll's rights to serve on a jury. As we read Michigan law, he would be automatically dismissed from jury service once either party brought his former conviction to the attention of the court in either a civil or criminal case. Furthermore, in a criminal case, Michigan court rules recommend that the trial court dismiss convicted felons on its on motion. While the trial court generally must decide whether the challenged person falls within a certain category, such a determination is not needed for convicted felons. As Judge Woods noted in *United States v. Butler,* 788 F.Supp. 944, 947 (E.D.Mich.1991), "A person either has been convicted of a felony or he has not. Once it is established that he has, the Michigan courts may not permit him to sit on a jury."

Of course, if no one questions a convicted felon about his past, such a person might be allowed to serve on a jury. But this same result could occur with any person who is not qualified to sit on Michigan juries. For example, under Mich.Comp. Laws Ann. 600.1307a(1)(a), a juror must "[b]e a citizen of the United States, 18 years of age or older, and a resident in the county for which the person is selected...." Nevertheless, an alien, or someone who looks older than he really is, could conceivably slip past the parties and sit on the jury. *See, e.g., Johr v. People,* 26 Mich. 427 (1873) (fact that one juror was an alien not discovered until after judgment). A verdict given by such a jury would not be automatically invalid, and could be struck down only if the party challenging the verdict "made [a] timely objection," "demonstrates actual prejudice to his cause," and "the noncompliance [with laws involving procedure] is substantial." Mich.Comp. Laws Ann. § 600.1354(1); *see also People v. Morgan,* 144 Mich.App. 399, 375 N.W.2d 757, 759 (1985). Surely, if an unqualified person managed to be a juror in a particular case, no one would claim that aliens or persons less than eighteen years old have a "right to sit on a jury" in Michigan. Similarly, we cannot say that Michigan has restored Mr. Driscoll's right to sit on a jury. Thus, he can still be prosecuted for violations of § 922(g)(1).

### C

Even if we believed Mr. Driscoll's rights to serve as a juror had been restored, we would still reject his appeal. A close analysis of the federal statutes involved demonstrates another reason why Mr. Driscoll should not be exempt from prosecution under § 922(g)(1). To explain this argument, we first note that 18 U.S.C. § 921(a)(20) does not refer directly to possible *defendants* under § 922(g)(1). Instead, it simply defines the term "crime punishable by imprisonment for a term exceeding one year," and provides guidelines as to which convictions actually fall within this definition. This case concerns two of those guidelines: (1) a conviction for which the felon has had his civil rights restored is not a conviction of a "crime punishable by imprisonment for a term exceeding one year"

under § 922(g)(1), and (2) if this restoration expressly provides that the felon may not ship or possess firearms, the underlying offense does count as a "crime punishable by imprisonment for a term exceeding one year" under § 922(g)(1).

This court provided specific rules for interpreting the first of these guidelines in *United States v. Cassidy*, 899 F.2d 543 (6th Cir.1990). As noted earlier, we determined in *Cassidy* that a state restores the civil rights of felons if it allows them to vote, hold public office and serve on juries. However, in *Cassidy* we did not discuss the second guideline so thoroughly. We did rule that "we must look to the whole of state law of the state of conviction to determine ... whether the 'convicted felon' is entitled to exercise the privileges of shipping, transporting, possessing or receiving a firearm." 899 F.2d at 549 (footnote omitted). However, *Cassidy* involved Ohio law, which placed clear restrictions on the right of the defendant in that case to own any firearms. Specifically, we referred to Ohio Rev. Code § 2923.13, which provided that unless relieved from disability as provided in section 2923.14 of the Revised Code, no person could use a firearm if he had been convicted of any offense involving illegal possession or trafficking in drugs. *See Cassidy*, 899 F.2d at 550 n. 15. Because the defendant in *Cassidy* had been convicted of selling marijuana and had not been relieved from this disability pursuant to § 2923.14, he clearly fell within the prohibition of § 2923.13. *United States v. Breckenridge*, 899 F.2d 540 (6th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 119, 112 L.Ed.2d 88 (1990), a case decided the same day as *Cassidy*, provides no more guidance, as it involved New Jersey law, which placed a clear prohibition on the defendant's right to possess a firearm.

Thus, neither *Cassidy* nor *Breckenridge* determined the question presented by this case: does Michigan's *partial* restriction on Mr. Driscoll's ability to own firearms mean that his former conviction can be used to support a prosecution under 18 U.S.C. § 922(g)(1)? In order to find an answer, we must analyze the language of the relevant statutes. "Where, as here,

resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear." *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

The federal statutory scheme begins with the presumption that a convicted felon cannot legally purchase firearms. Section 922(g)(1) simply prohibits persons who have been convicted of "a crime punishable by imprisonment for a term exceeding one year," from shipping, possessing, or receiving firearms or ammunition. However, § 921(a)(20) provides a mechanism by which the jurisdiction that convicted a felon can overcome this presumption. Thus, if a state chooses to treat former felons as full members of society, and refuses to place any limitations on their activities, the federal government will defer to this decision and allow such persons to possess firearms. But Congress apparently recognized that some jurisdictions may wish to restore most rights to former felons, yet retain limitations on their ability to use firearms. In this case, the federal government maintains its original presumption, and continues to prohibit such people from owning firearms.

■■■ Thus, we hold that in cases involving 18 U.S.C. § 922(g)(1), federal courts should examine state law solely for the purpose of determining whether the state has restored felons to their full civil rights, including allowing them to possess firearms. If so, then the state has effectively vouched for its convicted felons, declaring them free of stigma and worthy of equal treatment by the federal government. Congress, in turn, has promised to respect the states' decisions, and has decided not to burden those whom the states have exonerated. Because of this interpretation of federal law, we reject the idea, apparently adopted by the Ninth Circuit in *Dahms*, that federal law prohibits convicted felons only from carrying such weapons as the state originally sentenced them would not allow them to carry. Under federal law, a person is either treated as a convicted fel-

on, and thus prohibited from carrying any firearms, or is treated as though he had a clean record, and thus allowed to carry all legal firearms. Certainly, state law is important, for Congress has decided that convicted felons in one state may be treated differently than convicted felons in another state. But the idea that Congress intended to treat various weapons differently within the same state simply contradicts the plain language of federal law. Therefore, while we recognize that federal courts must defer "to state law with respect to the federal firearms privileges of persons convicted in that state," *Cassidy*, 899 F.2d at 549, we refuse to allow the intricate details of state law to override a fairly straightforward federal plan.

Applying our holding to the facts of this case, we cannot say that Michigan has demonstrated sufficient trust in its convicted felons to exempt them from the prohibitions listed in § 922(g)(1). As noted earlier, at the time of Mr. Driscoll's arrest, Michigan law would not grant a pistol license to a convicted felon until such a person had been released from prison for eight years. This provision represents a significant burden on Mr. Driscoll's ability to carry firearms, and indicates strongly that Michigan did not intend to help its felons overcome the federal presumption against allowing them to possess weapons.

Michigan's decision not to place similar restrictions on other weapons does not affect this conclusion. A state could certainly decide that licensing of all dangerous weapons was unnecessary, and thus not place limitations on the use of firearms it considered to be used primarily for recreational purposes, such as rifles or shotguns. It could also decide not to bother prosecuting convicted felons who owned such weapons, particularly if it believed such felons were already violating federal law. Such decisions by a state, however, surely do not indicate an attempt by the state to exonerate its convicted felons in the sight of federal law, and § 921(a)(20) should not be

interpreted in such a manner as to turn this state policy into a major loophole in federal law. According to *Dahms*, Michigan must either change its law or watch helplessly as those to whom it would not grant a pistol license carry with impunity everything from sawed-off shotguns to assault rifles.

A similar construction of the federal statutes in question was apparently adopted by the Tenth Circuit in *United States v. Burns*, 934 F.2d 1157 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1246, 117 L.Ed.2d 478 (1992). In *Burns*, the court ruled that under Kansas law, the defendant's right to possess firearms had not been restored, even though he had received a document purporting to restore his civil rights. To support this conclusion, the *Burns* court relied upon Kan.Stat.Ann. § 21–4204(1)(b), which outlaws possession of short-barreled firearms by felons within five years of their release.[2] Although this provision did not prevent the defendant from owning all firearms, the Tenth Circuit held that because of this rule, the defendant's "right to possess a firearm was never effectively restored following [his earlier] convictions." 934 F.2d at 1161. Similarly, we hold that Michigan's partial restriction on Mr. Driscoll's ability to own firearms prevents him from claiming that his rights have been restored.

Finally, we reject the suggestion that the "rule of lenity" should be dispositive in this case. While we recognize that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971), we find no such ambiguity here. The relevant federal law clearly indicates both Congress's intention to prohibit all convicted felons from carrying any firearms, and its willingness to allow states to remove certain felons from this general prohibition. The heavy burdens placed on Mr. Driscoll's ability to carry a pistol by Michigan indicate the state's refusal to

---

**2.** Specifically, Kan.Stat.Ann. § 21–4204(1)(b) prohibits: "possession of a firearm with a barrel less than 12 inches long by a person who, within five years preceding such violation has been convicted of a felony under the laws of Kansas or any other jurisdiction or has been released from imprisonment for a felony."

vouch for his trustworthiness, and they prevent him from claiming the protection of 18 U.S.C. § 921(a)(20). Because of the clarity of the federal law in question, reliance on the rule of lenity would be inappropriate. "[T]he rule of lenity is not to be applied where to do so would conflict with the implied or expressed intent of Congress.". *Liparota v. United States,* 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985).

### III

■ Mr. Driscoll next maintains that because the jury had to weigh his testimony against that of the arresting officers, he requested the disclosure of the officers' personnel files in an effort to find information that cast doubt on their credibility. He contends that the denial of this motion violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which held that government suppression of material evidence favorable to an accused violates due process.

We reject this argument. Mr. Driscoll offered no support for his contention that personnel files might contain information important to his case. "The Supreme Court has made clear that the *Brady* rule is not an evidentiary rule which grants broad discovery powers to a defendant and that '[t]here is no general constitutional right to discovery in a criminal case.'" *United States v. Todd,* 920 F.2d 399, 405 (6th Cir.1990) (quoting *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977)). "The Court also has made it clear that while the *Brady* rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure." *United States v. Presser,* 844 F.2d 1275, 1281 (6th Cir.1988). Furthermore; "the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Agurs,* 427 U.S. 97, 108,

96 S.Ct. 2392, 2399–2400, 49 L.Ed.2d 342 (1976).

In light of these principles, we agree with *United States v. Andrus,* 775 F.2d 825 (7th Cir.1985), in which the Seventh Circuit rejected a defendant's argument that he should have had access to material from testifying officers' personnel files that might have been used for impeaching them.

> "Mere speculation that a government file may contain *Brady* material is not sufficient to require a remand for *in camera* inspection, much less reversal for a new trial. A due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the district court."

775 F.2d at 843 (quoting *United States v. Navarro,* 737 F.2d 625, 631 (7th Cir.), *cert. denied,* 469 U.S. 1020, 105 S.Ct. 438, 83 L.Ed.2d 364 (1984)). We also agree with *United States v. Pitt,* 717 F.2d 1334, 1338–39 (11th Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1421, 79 L.Ed.2d 746 (1984), which held that because a defendant had failed to demonstrate that the contents of an FBI agent's file contained material evidence, the district court did not err in refusing to order the prosecution to turn over this file. Mr. Driscoll's speculative claim falls into the same category as the claims rejected in *Pitt* and *Andrus,* and we hold that it was properly denied.

### IV

■ Mr. Driscoll also attacks his conviction for carrying an unregistered shotgun, in violation of 26 U.S.C. § 5861(d). This statute makes it unlawful for anyone "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record...." The shotgun allegedly carried by Mr. Driscoll falls within this provision, for under 26 U.S.C. § 5845(a)(1), a "firearm" is defined as "a shotgun having a barrel ... less than 18 inches in length...." However, 26 U.S.C. § 5845(d) states that "[t]he term 'shotgun' ... shall include any such weapon which may be readily restored to fire a

fixed shotgun shell." Thus, Mr. Driscoll reasons that a shotgun that cannot be readily restored to fire is not a "firearm," within the meaning of § 5861(d).[3] To support this position, Mr. Driscoll invokes *United States v. Seven Miscellaneous Firearms*, 503 F.Supp. 565, 573 (D.D.C. 1980): "If Government Exhibits 1 through 4 were not designed or manufactured to shoot, or cannot be readily restored to shoot, automatically, they are not firearms within the coverage of [26 U.S.C. §§ 5801 *et seq.* ]." *See also United States v. Woods*, 560 F.2d 660, 664–65 (5th Cir.1977), *cert. denied*, 435 U.S. 906, 98 S.Ct. 1452, 55 L.Ed.2d 497 (1978); *United States v. Priest*, 594 F.2d 1383 (10th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct. 95, 62 L.Ed.2d 61 (1979).

Mr. Driscoll contends that in this case, the government never demonstrated that the shotgun in question was an operable firearm, and showed only that he was seen carrying something that *appeared* to be a shotgun. The shotgun was apparently inoperable when it was introduced into evidence. In light of these facts, Mr. Driscoll claims that the district court committed reversible error by refusing to instruct the jury that it should return a verdict of not guilty if it believed that the firearm was not operable.

"A trial court's refusal to give a requested jury instruction is reversible error only if the instruction is 1) correct, 2) not substantially covered by the actual jury charge, and 3) so important that failure to give it substantially impairs defendant's defense." *United States v. Sassak*, 881 F.2d 276, 279 (6th Cir.1989); *see also United States v. Parrish*, 736 F.2d 152, 156 (5th Cir.1984). We need not inquire whether the first two elements of this test have been met, for Mr. Driscoll has failed to demonstrate that the district court's instructions substantially impaired his defense.

As noted earlier, Mr. Driscoll's defense depended upon his claim that he had never seen the shotgun before his arrest. The condition of the shotgun did not become an issue until both sides had rested. In the colloquy over the instruction, the district court specifically stated that "there is no testimony, indeed there's no testimony from anybody including your clients, that [the shotgun] was unserviceable at the time of the incident." Furthermore, the government argued that if this question was to be presented to the jury, it would move to reopen the proofs and place "an officer on the stand and testify as to the serviceability of the weapon at this time." Thus, we conclude that the gun's condition simply was not an important issue at the trial, and therefore Mr. Driscoll's defense was unimpaired by failure to give the proposed instruction.

V

Mr. Driscoll argues that because the government never proved that the shotgun was operable, it never established the necessary elements for concluding that the shotgun was a firearm within the meaning of 26 U.S.C. § 5861(d). Thus, he claims that his conviction must be reversed, because "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re *Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).

We reject Mr. Driscoll's argument, and hold that the government met its burden of proof in this case. In determining whether sufficient evidence supports a conviction, we "must consider all the evidence in a light most favorable to the government and then determine whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt."

---

**3.** At trial, Mr. Driscoll argued that the shotgun was an "unserviceable firearm," under the definition of 26 U.S.C. § 5845(h), which defines this term as "a firearm which is incapable of discharging a shot by means of an explosive and incapable of being readily restored to a firing condition." Because this term does not appear relevant to prosecutions under § 5861(d), and because the same argument can be made under § 5845(d), we do not address the term "unserviceable firearm" in this case.

*United States v. Walton*, 908 F.2d 1289, 1294 (6th Cir.), *cert. denied*, —— U.S. ——, ——, ——, 111 S.Ct. 273, 530, 532, 112 L.Ed.2d 229, 541, 542 (1990). "This standard of review is the same whether evidence reviewed is direct or circumstantial." *United States v. Seltzer*, 794 F.2d 1114, 1119 (6th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 979 (1987). In this case, the jury could have found that Mr. Driscoll was holding a loaded shotgun when the officers saw him. After he saw the police, he ran and threw the gun, thus breaking its stock. From these facts, a rational fact-finder could conclude that the shotgun had been fully operable before it was thrown. Thus, we must affirm the jury's decision. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

## VI

As noted earlier, the prosecutor argued in his closing statement that while the police officers had to file reports soon after the incident, Terry Driscoll had plenty of time to fabricate a story. Ronald Driscoll maintains that through this argument, the prosecutor commented negatively on a defendant's exercise of his right to remain silent, thus violating a principle set forth in *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976): " '[I]t does not comport with due process to permit the prosecution during the trial to call attention to [a defendant's] silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.' " (quoting *United States v. Hale*, 422 U.S. 171, 182–83, 95 S.Ct. 2133, 2139, 45 L.Ed.2d 99 (1975) (White, J., concurring)).

Mr. Driscoll also protests the prosecutor's argument that the jury should believe the police because they had no motive to lie. He argues that this argument violated *United States v. Krebs*, 788 F.2d 1166, 1176 (6th Cir.), *cert. denied*, 479 U.S. 930, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986), which states that " 'it is improper for a prosecut-

ing attorney in a criminal case to state his personal opinion concerning the credibility of witnesses or the guilt of a defendant.' " (quoting *United States v. Daniels*, 528 F.2d 705, 709 (6th Cir.1976)). He also attacks the prosecutor's description of the Driscolls as "convicted felons," and his suggestion that avoiding conviction constituted the defendants' "last best hope." By using such phrases, Mr. Driscoll argues, the prosecutor sought to inflame the jury by invoking the defendants' past and by emphasizing that they would go to prison if convicted. He claims that such tactics violate *Sizemore v. Fletcher*, 921 F.2d 667, 670 (6th Cir.1990):

> [W]hen a prosecutor has made repeated and deliberate statements clearly designed to inflame the jury and prejudice the rights of the accused, and the court has not offered appropriate admonishments to the jury, we cannot allow a conviction so tainted to stand.

"[R]eversal of a conviction should not be ordered when a prosecutor's behavior, even though inappropriate, has not resulted in prejudicial error." *Id.* at 670; *see also United States v. Young*, 470 U.S. 1, 11–12, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1 (1985). After reviewing the record, we do not believe the statements in question constituted harmful error. In *United States v. Leon*, 534 F.2d 667, 679 (6th Cir.1976), this court established the following guidelines to determine whether prosecutorial misconduct prevented defendants from receiving a fair trial:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused.

We first note that all the statements in question represented only a few comments in the course of a trial that took several days; Mr. Driscoll has presented no evidence of misconduct at any other stage of the trial. Thus, we conclude that the state-

ments in question were isolated rather than extensive. Furthermore, we cannot say that the proofs introduced at trial were either so weak or so strong as to control this question. We also recognize that the statements in question were not heard by accident, but were made deliberately.

We conclude that when viewed in context of the full closing argument, the prosecutor's statements do not appear to be part of an attempt to mislead or prejudice the jury. Much of this case turned on whether the jury would believe the officers or the defendant. Thus, as part of his closing argument, the prosecutor contended that someone who must tell his story several times, such as the officers, would likely make more small errors than someone who needed to testify only once. Rather than an attack on the defendants' post-arrest silence, we interpret this argument as merely an attempt to explain the effects of that silence. Furthermore, the statement in question referred to Terry Driscoll rather than Ronald Driscoll, the appellant in this case. As for the comments that the defendants had strong incentives to lie, such comments seem designed merely to juxtapose the police officers' detached perspective with the defendants' strong interest in the outcome of their case. Finally, the prosecutor's discussion of the defendants' "last, best hope" referred only to their attempt to avoid *conviction*, rather than any specific punishment.

Thus, to summarize the *Leon* factors, we conclude that the statements in question were isolated incidents that did not tend to mislead the jury or prejudice the accused, although they were made deliberately in a case that could have been decided either way. Seen as a whole, we believe that these factors indicate that harmful error did not occur in the prosecutor's closing statement. Certainly, this case presents none of the blatant, heavy-handed appeals to bias found in such prosecutorial misconduct cases as *Sizemore v. Fletcher*, 921 F.2d 667 (1990).

Even if the prosecutor's comments were improper, however, they would not justify a reversal of Mr. Driscoll's conviction. Because Mr. Driscoll's trial counsel made no objection to the statements in question, we must determine whether they constitute plain error under Fed.R.Crim.P. 52(b). We simply do not believe that the prosecutor's argument meets the high standard for plain errors, which are "limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." *United States v. Causey*, 834 F.2d 1277, 1281 (6th Cir. 1987), *cert. denied*, 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988). Furthermore, "inappropriate remarks by the prosecutor do not alone justify reversal of a criminal conviction in an otherwise fair proceeding, as long as the jury's ability to judge the evidence fairly remains intact." *United States v. Castro*, 908 F.2d 85, 89 (6th Cir.1989). Mr. Driscoll asks us to rule that the comments in question were so heinous that they prevented him from having a fair trial, or that the district court should have immediately intervened to prevent the prosecutor from continuing. In light of the isolated nature and relative moderation of these comments, we cannot do so.

Other courts have issued similar rulings. In *United States v. Swiatek*, 819 F.2d 721, 731 (7th Cir.), *cert. denied*, 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987), no plain error was found in the prosecutor's argument that a government agent "had no reason to lie and risk his career and reputation," although "[t]his comment was clearly improper when considered in isolation...." In *United States v. Gwaltney*, 790 F.2d 1378, 1385–86 (9th Cir.1986), *cert. denied*, 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987), the Ninth Circuit found no plain error in a prosecutor's statement that "[T]hese [government witnesses] who testified here, ladies and gentlemen, are professionals and they will have to tell the truth." Finally, in *United States v. Meyers*, 952 F.2d 914, 917 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 1695, 118 L.Ed.2d 407 (1992), this court held that two challenged prosecutorial statements did not taint the proceedings so as to prevent a fair

trial. While these cases are not binding, they indicate that improper prosecutorial statements do not always constitute plain error.

## VII

We hold that, as a matter of federal law, Michigan had not restored Mr. Driscoll's civil rights, and thus he could be prosecuted under 18 U.S.C. § 922(g)(1). We also reject his other claims of error. Thus, his conviction is AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, dissenting.

Because I believe that Driscoll should prevail on three of the issues he raised before this Court, I must respectfully dissent. I would hold that Driscoll did not violate 18 U.S.C. § 922(g)(1) (1988), that the district court's flat refusal to allow him access to the police officers' personnel files was error, and that the district court erred in refusing to give a jury instruction on the operability of the firearm involved in this case. My reasons are as follows.

## I

The first count of Driscoll's indictment charged him with violating 18 U.S.C. § 922(g), which reads, in pertinent part, that: "[i]t shall be unlawful for any person—(1) who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." *Id.* Driscoll argues that, because he is not a "convicted person" for purposes of § 922(g)(1), his conviction under that section cannot stand. Driscoll points out that 18 U.S.C. § 921(a)(20) (1988) defines a conviction of the sort discussed in § 922(g)(1) to exclude, inter alia, convictions "for which a person has been pardoned or has had civil rights restored ... unless such pardon ... or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20). Driscoll contends that, because Michigan law re-

stores convicted persons' civil rights upon their release from imprisonment, he is not a convicted person and, therefore, is not barred from carrying a firearm under § 922(g)(1).

This court considered a similar argument in connection with Ohio law in *United States v. Cassidy*, 899 F.2d 543 (6th Cir. 1990). The *Cassidy* court focused on Congress's additional mandate in § 921(a)(20): "What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20); *see Cassidy*, 899 F.2d at 545. After considering this text in conjunction with § 922(g)(1), the court held

> that Congress intended that courts refer to state law to determine whether an individual should be subject to federal firearms disabilities by virtue of a criminal conviction. If state law has restored civil rights to a felon, without expressly limiting the felon's firearms privileges, that felon is not subject to federal firearms disabilities.

*Cassidy*, 899 F.2d at 546. Thus, under *Cassidy*,

> if a "convicted felon" has his civil rights restored by operation of state law, with or without a certificate or order documenting the event, we must look to the whole of state law of the state of conviction to determine whether the "convicted felon" is entitled to vote, hold public office and serve on a jury and also whether the "convicted felon" is entitled to exercise the privileges of shipping, transporting, possessing or receiving a firearm.

*Id.* at 549.

The only federal court of appeals to consider Michigan law under these circumstances has been the Ninth Circuit, in *United States v. Dahms*, 938 F.2d 131 (9th Cir.1991). The Ninth Circuit followed *Cassidy* in determining whether Michigan law restored Dahms' civil rights upon his release from imprisonment. *See id.* at 133. The court referred to sections 168.758b, 168.938, and 600.1307a of the Michigan Compiled Laws, which revoke a felon's

right to vote, to hold office, and to be a juror, respectively, during the time he is serving his sentence. *Dahms*, 938 F.2d at 134 nn. 1–3. "Once incarceration has ended, however, these rights are restored automatically by the force of the very laws that suspend them." *Id.* at 134.

The United States concedes that Michigan law automatically restores a felon's right to vote and right to hold office upon his release from imprisonment, and the majority acknowledges this as well. The majority finds, however, that Michigan law does not restore the right to serve on a jury. This holding is based on the majority's reading of the Michigan Court Rules, which provide that conviction of a felony is grounds for a challenge for cause against a prospective juror. Mich.Ct.R. 2.511(D)(2). The government reads this rule in conjunction with Rule 6.412(D)(2), which incorporates the grounds listed in Rule 2.511(D) by reference, and provides that "[i]f, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." Mich.Ct.R. 6.412(D)(2). Reaching the conclusion that a convicted felon may, therefore, never properly serve on a jury, the majority holds that the right is not restored to convicted persons after release, and cites for support a line of Michigan cases which hold, for example, that a court is required "to excuse a juror whenever a challenge for cause clearly falls within one of the enumerated grounds." *E.g., People v. Lamar*, 153 Mich.App. 127, 395 N.W.2d 262, 265 (1986).

I disagree with the majority's reasoning. Rule 2.511(D) provides that "[t]he parties *may* challenge jurors for cause." Mich. Ct.R. 2.511(D) (emphasis added). If neither party in a civil suit challenges a convicted person's presence on the jury, that person may serve on the jury. The cases cited by the majority hold only that *when a challenge is made*, if the basis for the challenge is listed in Rule 2.511(D), the court must excuse the challenged juror. *See Lamar*, 395 N.W.2d at 265. Rule 6.412(D)(2), cited by the government as requiring the

court to dismiss such jurors *sua sponte*, applies only to *criminal* cases and, moreover, as the commentary to that rule notes, "the court's duty to discharge a juror for cause sua sponte is directive ('should') *rather than mandatory* or permissive." Mich.Ct.R. 6.412(D)(2) staff comment (emphasis added). This distinction is quite logical, given that the general purpose of allowing parties to challenge jurors for cause is to weed out potentially biased jurors, *see Lamar*, 395 N.W.2d at 265; a convicted felon is more than likely to have a bias against the criminal justice system, whereas the same would not be true of a felon in a civil case.

Finally, as the majority acknowledges, one of the grounds for dismissal listed in Rule 2.511(D) is that the person "is not qualified to be a juror." Mich.Ct.R. 2.511(D)(1). The qualifications for a juror are listed in section 600.1307a of the Michigan Compiled Laws Annotated, and are concerned with competency. One must be a citizen of the United States, at least eighteen years of age, conversant in English, and physically and mentally capable of fulfilling the duties of a juror, for example, to be qualified to be a juror in Michigan. Mich.Comp. Laws Ann. § 600.1307a(1)(a)– (c). This section also states clearly that one may "[n]ot be *under sentence* for a felony at the time of jury selection." *Id.* § 600.1307a(1)(e) (emphasis added). This requirement is the only one pertaining to a felon's competency that the Michigan legislature imposed. A strong argument exists that, if the court rules restrict a convicted felon's right to serve on a jury after his release, the rules are unconstitutional under the Michigan Constitution as violative of the separation of powers. In any event, if a conviction made one "unqualified" to be a juror, even after release, under the laws of Michigan—as does being under the age of eighteen, for example, Mich.Comp. Laws Ann. 600.1307a(1)(a))—there would be no need to list conviction as a separate ground. To interpret the provision otherwise renders Rule 2.511(D)(2) redundant. Therefore, although a convicted person's right to sit on a jury may be limited, I

would hold that Michigan law does restore that right to such persons automatically after the period of incarceration is over. *See Dahms*, 938 F.2d at 134.

Given that Michigan law restores a convicted person's civil rights upon release from imprisonment, the only remaining question is whether Michigan law expressly prohibits such a person from shipping, transporting, possessing, or receiving firearms. *See* 18 U.S.C. § 921(a)(20). Driscoll was convicted of carrying a short-barrelled shotgun. Michigan law, at the time relevant to this appeal, restricted a convicted person's right with respect to firearms only as follows:

> A person shall not purchase, carry, or transport *a pistol* without first having obtained a license therefor as prescribed in this section.... A license shall not be granted under this section to any person unless the applicant meets all of the following: ... (c) [h]as not been convicted of a felony or has not been incarcerated as a result of a felony conviction in this state or elsewhere during the 8–year period immediately preceding the date of application.

Mich.Comp.Laws § 28.422 (1989). The majority agrees with the Tenth Circuit, *see United States v. Burns*, 934 F.2d 1157 (10th Cir.1991), that the above restriction, although it is only a specific limitation rather than a total ban on a convicted person's right to own firearms, triggers a complete federal ban on that person's right.

The Ninth Circuit's holding in *Dahms* is the better one, I believe, and I would hold, like the Ninth Circuit, that if Michigan law does not restrict a felon's right to own the type of firearm found in his possession, then the "unless" clause of § 921(a)(20) is not triggered. The Ninth Circuit relied on this circuit's opinion in *Cassidy* in determining that it must defer to state law with respect to the federal firearms privileges of persons convicted in that state. *Dahms*, 938 F.2d at 135. Thus, our own precedent compels the conclusion reached by the *Dahms* court: "To apply § 922(g)(1) and conclude that [defendant's] right to possess any firearm was restricted under federal

law because the state restricted his possession of a pistol would undermine the explicit deference to state law in § 921(a)(20)." *Id.* Accordingly, I would reverse the district court's decision on this issue.

## II

Driscoll also argues that the district court erred in denying him access to the personnel files of the arresting officers who testified as witnesses at his trial. Contrary to the majority, I agree that the district court erred.

Driscoll claims that he needed the files to impeach the officers at trial, because the only evidence against him was their testimony. He and his cousin testified at trial that they were inside an apartment when the officers burst in and arrested them. Driscoll also claimed that he had never seen the firearm before. Because the prosecution's case pitted the officers' testimony against that of Driscoll and his cousin, the officers' credibility was a crucial factor in the case. Driscoll contends that he should have been given access to the officers' personnel files so that he could present an adequate defense, effectively cross-examine the officers, and attack their credibility in the same manner in which they were able to attack his.

Driscoll cites *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) in support of his argument. In *Brady*, the Supreme Court held that the United States is obligated to disclose evidence that the defense can use to impeach a government witness. *Id.* at 87, 83 S.Ct. at 1196. Although I recognize that "the *Brady* rule is not an evidentiary rule which grants broad discovery powers to a defendant and that '[t]here is no general constitutional right to discovery in a criminal case,'" *United States v. Todd*, 920 F.2d 399, 405 (6th Cir.1990) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977)), I nonetheless believe that the law requires courts to protect a defendant's right to due process by making certain that the prosecution meets its obligation "to turn over evidence in its possession that is both favorable to the

accused and material to guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987). In *United States v. Phillip*, 948 F.2d 241 (6th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1994, 118 L.Ed.2d 590 (1992), this circuit acknowledged that only where the disclosure of evidence is reasonably likely to produce a different result in the trial is that evidence material. *Id.* at 249. The court went on to say that "information withheld by the prosecution is not material unless the information consists of, or would lead directly to, evidence admissible at trial for either substantive or impeachment purposes." *Id.*

If the arresting officers' personnel files contained evidence that would cast doubt on their credibility, there is a reasonable probability that the outcome of Driscoll's trial might have been different. I am also convinced that Driscoll was at an unfair disadvantage, in that the prosecution emphasized the officers' credibility, and Driscoll was unable to rebut these remarks. Therefore, to balance the importance of a defendant's due process rights against the recognition that a defendant does not have a right to unlimited discovery, I would again follow the lead of the Ninth Circuit. In a case on all fours with the instant case, *United States v. Henthorn*, 931 F.2d 29 (9th Cir.1991), the Ninth Circuit held that a defendant seeking *Brady* materials *for impeachment purposes* is not required to make an initial showing of materiality to have his case remanded for an in camera inspection of the materials in question. *Id.* at 31. The *Henthorn* holding is contrary to the Seventh Circuit's decision in *United States v. Andrus*, 775 F.2d 825, 842–43 (7th Cir.1985), upon which the majority relies. I believe the *Henthorn* approach more evenly balances the opposing concerns involved. Therefore, I would remand this case to the district court for an in camera inspection of the officers' personnel files, to determine if any evidence material to Driscoll's guilt— that is, evidence that would undermine the officers' credibility—is contained therein.

## III

Finally, I disagree with the majority on Driscoll's challenge to the district court's refusal to give a jury instruction on whether the firearm he was charged with possessing was readily restorable. Driscoll was charged with violating 26 U.S.C. § 5861(d), which makes it unlawful for anyone to "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d) (1988). Driscoll argues that, because the prosecution did not prove that the firearm was operable, it failed to prove that the weapon he allegedly possessed was a "firearm."

A "firearm," for purposes of § 5861(d), is defined, inter alia, as "a shotgun having a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845(a) (1988). A "shotgun," in turn, is defined, in pertinent part, as "any such weapon which may be readily restored to fire a fixed shotgun shell." 26 U.S.C. § 5845(d) (1988). Driscoll contends that the jury should have been charged to find that he was not in possession of a "firearm" if the weapon he was accused of carrying was not readily operable. Because the stock of the weapon involved in this case was broken when the officers found it, Driscoll argues that it was not readily operable—or, at a minimum, that the jury should have determined whether or not it was.

"The standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir.1984). I think it is clear that the issue of whether the weapon Driscoll was charged with possessing was a "firearm" was an issue for the jury. By not instructing the jury on that issue, the district court invaded the province of the jury. The prosecution should have been required to prove that the weapon was, in fact, "readily restorable." The district court's observance that Driscoll had not offered testimony that the firearm was unserviceable is irrelevant; the defendant's failure to testify on an issue does not relieve the prosecution of its burden of proving the elements of the crime beyond a

reasonable doubt. Thus, I would hold that the district court abused its discretion in refusing to give the requested jury instruction.