7 F.3d 235
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Melford Lee CRUMB, Defendant-Appellant.
 No. 92-1939.
 United States Court of Appeals, Sixth Circuit.
 Sept. 7, 1993.
 
 On Appeal from the United States District Court for the E.D.Mich., No. 90-80849; LaPlata, D.J.
 E.D.Mich.
 AFFIRMED.
 Before KEITH, GUY and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Melford Crumb, was charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). After indictment, the government filed the required statutory notice specifying Crumb as an armed career criminal. Crumb had three predicate felony convictions.
 
 
 2
 Prior to trial, Crumb filed a motion to suppress the evidence concerning the handgun he was charged with possessing. The motion was denied. A jury trial followed, which resulted in a conviction.
 
 
 3
 Five issues are raised on appeal. Three are raised by appointed counsel, and the defendant has raised two issues in his own pro se supplemental brief. The issues are as follows: (1) the court erred in denying defendant's motion to suppress; (2) the court erred in finding that the defendant was a "felon" under Michigan law; (3) defendant's 1973 and 1977 convictions should not have been included in the determination of whether he was an armed career criminal; (4) (pro se) 18 U.S.C. § 924(a)(2) requires knowledge by a defendant that the firearm moved in interstate commerce; and (5) (pro se) one of defendant's predicate convictions--manslaughter--was not a "violent felony" and thus should not have been used for determination of the armed career criminal enhancement. Although we discuss these issues seriatim, we find them lacking in merit and affirm.
 
 I.
 
 4
 Did the Court Err in Denying Defendant's Motion to Suppress
 
 
 5
 On August 30, 1990, a search warrant was executed by Pontiac police at a dwelling occupied by defendant Crumb. The warrant specifically authorized a search for cocaine, narcotics paraphernalia, and residency documents. It also authorized a search of the person of Willie Dudley, an individual named "Caruso," and "all occupants found therein." The warrant did not mention defendant Crumb by name or anything regarding firearms.
 
 
 6
 This search warrant was executed at night. When the van transporting the search team pulled up to Crumb's house, the headlights from the van shone into the backyard and revealed an individual sitting in a chair and talking on a telephone. One of the officers observed the individual in the chair throw or drop something to the ground. That officer immediately ordered the person in the chair to "put his hands up." Immediately thereafter, another officer entered the backyard, told the individual in the chair to lie on the ground, and conducted a pat-down search. A firearm was found near the feet of the person on the ground. The pat-down search of this individual, who was later identified as Crumb, revealed a holster which fit the firearm picked up off the ground, as well as some narcotics paraphernalia. The defendant was arrested. It is not clear from the record the exact charge on which the defendant was initially arrested. It may have been possession of narcotics paraphernalia or carrying a concealed weapon. In any event, when it was found that Crumb lived at the premises where he was arrested, the bottom fell out of the CCW charge, and apparently the narcotics charge was never pursued. The seized firearm, however, proved to be stolen after its serial number was checked.
 
 
 7
 Crumb ultimately was charged with receipt and possession of stolen property valued at over $100. It later was determined that the firearm was valued at less than $100 and so the prosecutor dismissed the case. Pontiac police had mentioned this case to an ATF agent, however, and the agent agreed to pursue the matter since Crumb had a prior felony record and would be in violation of the federal prohibition against a felon possessing a firearm.
 
 
 8
 Although defense counsel attempts to make much of the circumstances surrounding Crumb's arrest and the charges brought against him, this has little to do with the validity of the initial seizure of the weapon. First, since Crumb discarded the gun, arguably there was an abandonment, and the police were free to take the gun into their custody. Second, Crumb was on the premises where a search warrant was being executed, and, under the circumstances presented here, it was reasonable for the officer to search him or any other occupants of the house. Also, since it was not clear at the time the firearm was discovered that Crumb was a lawful resident of the premises being searched, the police had a reasonable justification for taking the gun as evidence since it appeared that Crumb was illegally carrying a concealed weapon.
 
 
 9
 Under either theory, once the gun legally came into the possession of the police, it was not only permissible but also entirely appropriate for them to check the serial number against the stolen weapons list, and thus discover that they were dealing with a stolen firearm.
 
 
 10
 Defense counsel appears to be arguing that this seizure can be justified only as incident to a lawful arrest and the seizure must be declared illegal because the arrest was, in fact, not lawful. Although the charges against Crumb were dismissed, there never has been a determination that the arrest was without probable cause.
 
 
 11
 Defense counsel also argues that this was not a plain view seizure; however, the government does not rely upon the plain view doctrine in justifying the seizure.
 
 
 12
 At sentencing, Crumb freely admitted that the gun was his and that he possessed it, and for his defense he relied upon his understanding that in Michigan it was not illegal for a felon to possess a firearm. He made the arguments that this court later rejected in United States v. Gilliam, 979 F.2d 436 (6th Cir.1992), cert. denied, 113 S.Ct. 1856 (1993), and United States v. Driscoll, 970 F.2d 1472 (6th Cir.1992), cert. denied, 113 S.Ct. 1056 (1993).
 
 
 13
 The district court correctly denied the motion to suppress the firearm as evidence.
 
 II.
 
 14
 Did the Court Err in Finding that the Defendant was a "Felon" Under Michigan Law
 
 
 15
 Defendant would be considered a felon for purposes of the federal statute. Our decisions in Gilliam and Driscoll foreclose defendant's arguments on this point.
 
 III.
 
 16
 Did the Court Err in Including Defendant's 1973 and 1977 Convictions in the Determination of Whether he was an Armed Career Criminal
 
 
 17
 Defendant's argument that his 1973 and 1977 convictions should not have been included in considering whether he was punishable as an armed career criminal is premised upon the same argument he makes in issue II, i.e., that his civil rights were restored and therefore these prior convictions no longer can serve as a predicate for a felon in possession charge. As indicated, subsequent decisions of our court preclude these arguments.
 
 IV.
 
 18
 Does 18 U.S.C. § 924(a)(2) Require Knowledge by a Defendant that the Firearm Moved in Interstate Commerce
 
 
 19
 We have held consistently that it is not necessary for a defendant himself to transport a firearm across a state line or even to have knowledge that the firearm moved in interstate commerce. United States v. Pedigo, 879 F.2d 1315, 1329 (6th Cir.1989). Thus, defendant's argument on this issue is devoid of merit.
 
 V.
 
 20
 Was it Error to Count Defendant's Prior Conviction for Manslaughter as a "Violent Felony" and Use it for Determination of the Armed Career Criminal Enhancement
 
 
 21
 Defendant has waived this issue because it was never raised in the district court. United States v. Pickett, 941 F.2d 411, 415 (6th Cir.1991).
 
 
 22
 Were we to consider the issue, however, we would find no error. The circuits having occasion to consider whether manslaughter constitutes a "violent felony" universally have concluded that it does. United States v. Leeper, 964 F.2d 751, 753 (8th Cir.1992) ("whether we focus on the elements of the crime or the offense's underlying facts, manslaughter qualifies as a crime of violence"); United States v. O'Neal, 937 F.2d 1369, 1372 (9th Cir.1990) (vehicular manslaughter constitutes a violent felony); United States v. Springfield, 829 F.2d 860, 863 (9th Cir.1987) (involuntary manslaughter constitutes a violent felony for purposes of 18 U.S.C. § 924(c)). In addition, the application notes to the United States Sentencing Guidelines explicitly designate manslaughter as a "crime of violence" because it presents a "serious potential risk of physical injury to another." U.S.S.G. § 4B1.2, comment. (n. 2).
 
 
 23
 AFFIRMED.